IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (404) 449-5544 | Case No. 2:23-cr-00991 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Robert Callahan, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(404) 449-5544**, (TARGET NUMBER) that is stored at premises controlled by T-Mobile U.S.A., a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile U.S.A to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since 2009. I have a Bachelor of Science degree in Criminal Justice received from the University of South Carolina. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I am currently assigned to the ATF

Charleston Field Office within the Charlotte Field Division. I have participated in numerous investigations involving state and federal firearm violations to include: the illegal possession of firearms, firearms trafficking, straw purchasing of firearms, dealing in firearms without a license, and firearms classified under the National Firearms Act (NFA), among others. I have also participated in numerous investigations involving state and federal narcotics violations. Accordingly, I am thoroughly familiar with the investigative techniques used in these investigations, such as the use of undercover agents, the use of cooperating witnesses and confidential informants, surveillance, search and seizure warrants, and the extraction and analysis of data from digital devices. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States

3. Your Affiant has personally participated in the investigation of the offenses discussed below. The facts and information contained in this affidavit are based upon my personal knowledge, my training and experience, information obtained from federal and local law enforcement officers, and information obtained from review of evidence and analyses of reports. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based upon the facts set forth in this affidavit, I submit that there is probable cause to believe that the records and other information described in Attachment A and Attachment B will help provide evidence to law enforcement to which may assist or provide leads in the ongoing investigation for the events described below, and to determine the nature and scope of their activities which were committed in violation of 18 U.S.C. § 922(o) (possession of machinegun), 26 U.S.C. § 5844 (unlawful import of firearms into the United States) and 26 U.S.C. § 5861(k) (possession of firearm unlawfully imported into the United States). Based on

information detailed below, there is probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5.  In December 2022, I reviewed the downloaded contents of a cell phone that had been seized from Carl Shedrick Hopkins pursuant to a federal search warrant. While reviewing the contents of the device, messages were discovered between Hopkins and an individual believed to be WRIGHT, a/k/a "Wink" discussing the acquisition and disposition of "switches" which I know, based on training and experience to be Glock conversion devices which are a type of machinegun conversion device.

6.  I reviewed several messages between Hopkins and phone number (404) 449-5544, labeled in Hopkins' phone as "Wink." I queried various law enforcement databases, and the aforementioned phone number is associated with WRIGHT. In response to a Court Order for records associated with the aforementioned phone number, T-Mobile records indicate the account billing address as, Herman Wright, PO Box 15955, Lenexa KS 66285.

7.  On January 12, 2022, "Wink" sent the following message to Hopkins, "im the real life Ghost no tv show but I got switches on deck for the glocks how many were you need." Hopkins replied, "I need couple to get rid I got sum plays for em yes sir!!!" "Wink" then sent Hopkins the following photograph of suspected Glock conversion devices:



8.  After sending the photograph of the suspected Glock conversion devices, "Wink" sent a message that stated, "Delete that pic asap tho."

9.  Hopkins sent "Wink" a photograph of an AR-style firearm and "Wink" stated, "I got the full switches for them too lol" and Hopkins replied, "Yep need it ASAP" and "Boy I get rid of all em in one day."

10. On July 3, 2022, a message from the Facebook messenger account, "Tobiah Wright" to Hopkins stated, "I'm coming this week was waiting on the rest of the switches."

11.  I am familiar with machinegun conversion devices and have been involved in prior investigations involving Glock and AR-type conversion devices. I know that often, due to their classification as machineguns and being regulated by ATF, these devices are commonly ordered online from another country and mislabeled with deceptive descriptions to conceal the true contents of the package, in an effort to divert the attention of law enforcement.

12. I requested inbound international shipments from Homeland Security Investigations (HSI) for parcels sent to WRIGHT. The shipment information indicated that "Tobiah Wright" was the consignee for several overseas shipments.

13. The data showed multiple shipments from China, addressed to "Tobiah Wright" at 255 E 9th North St Apt 24C, Summerville, SC. I queried the South Carolina Department of Motor Vehicles and discovered that WRIGHT's listed address is the same as above.

14. On July 5, 2023, I was notified by HSI that Customs and Border Protection (CBP) intercepted a parcel addressed to consignee "Tobiah Wright" at 255 E 9th North St, 24C, Summerville, SC with associated phone number (404) 449-5544. The package originated from China and arrived at JFK Airport on or about April 11, 2023, and subsequently placed on hold by CBP on or about April 12, 2023. I was advised that the package was searched by CBP on July 5, 2023, and twenty (20) Glock conversion devices and five (5) AR-type conversion devices were contained in the package, as identified by the photograph below.



15.    On August 7, 2023, I was notified by HSI that Customs and Border Protection (CBP) intercepted a parcel addressed to consignee "Tobiah Wright" at 255 E 9th North St, 24C, Summerville, SC 29483 with associated phone number (404) 449-5544. The package originated from China and arrived at JFK Airport on or about August 6, 2023, and subsequently placed on hold by CBP. I was advised that the package was searched by CBP on August 10, 2023, and fifteen (15) Glock conversion devices and five (5) AR-type conversion devices were contained in the package, as identified by the photograph below.



16.    All of the suspected machinegun conversion devices were sent to the ATF Firearms and Ammunition Technology Division where I received Reports of Technical Examination that indicated the devices are in fact, machineguns.

17.    On August 24, 2023, a federal search warrant was executed at WRIGHT's residence in Summerville, SC. During the search warrant investigators seized among other items, five (5) suspected Glock switch "bodies" and one (1) suspected Glock switch "selector switch."

Investigators also seized a cellular phone that was documented as ATF item 69 in this investigation. A federal search warrant was obtained for the ATF item 69 cell phone where an extraction of the device was conducted and the MSISDN was identified as (404) 449-5544.

18.     In reviewing the downloaded contents of the ATF item 69 cell phone, your affiant observed numerous "chats" wherein WRIGHT indicated that he ordered machinegun conversion devices, informed people when the devices came in, discussed pricing, and arranged for the dissemination of the devices. Your affiant also observed "screen shots" sent in April 2023 and July 2023 of orders for suspected machinegun conversion devices and tracking information in which the tracking numbers match the packages seized by Customs and Border Protection and were confirmed to contain machinegun conversion devices.

19.     Based on your affiant's training and experience, your affiant knows that a person who is involved in criminal activity often uses electronic devices, including but not limited to wireless telephones, to aid in their criminal activities. Your affiant knows, based on his training and experience, suspects frequently communicate with each other prior to, during and/or after the commission of a crime, and frequently utilize cellular phones during the commission of a crime. The information obtained from this cellphone usage can be of significant assistance to the investigation and evidence in a subsequent criminal prosecution by showing the communication records/pattern(s) between any possible suspect and co-conspirators. Location information and call detail records generated by the use of cellphones can indicate the general geographic area that the mobile device was located at, as well as provide investigative leads of whether witnesses or suspects communicated with anyone prior to, during and/or after a criminal event, which can associate the cellular phone/device to a specific suspect or individual.

20.     Based on your affiant's training and experience, your affiant knows that acquiring an extended period of call detail records can assist in establishing a pattern of life, or use, of a target telephone. Longer period of records outside the immediate date/time frame of the underlying crime can assist investigators in establishing calling patterns of the TARGET NUMBER and prevalent cell sectors utilized by TARGET NUMBER.  The establishment of this pattern of life, or use, is critical in helping investigators determine if, and when, this calling pattern changes, intensifies, or wanes during relevant time periods within the investigation. These changes in the pattern of life can also assist investigators in identifying any co-conspirator(s) who may have provided aid or counsel during the relevant time period surrounding the conception, planning, commission and/or cover-up of the criminal activity.

21.     Based on your affiant's training and experience, your affiant knows that historical cell-site records identify the cellular tower that a target phone used when engaging in a communication such as a call or text.  Many cellular towers have multiple antenna faces, or "sectors," each of which provides service to a particular portion of the tower's geographic service area.  In such cases, the historical cell-site records will also identify the sector of the cell tower that the phone used during the communication.  Investigators can use this information about the cell tower and sector that were used by a phone to determine the general area in which the target phone was likely to be at the time that a particular communication occurred.  While the precision of this information varies depending on factors including the distance between cellular towers, at best, cell-site location information will reveal the neighborhood in which a phone was likely to have been located.

22.     Based on your affiant's training and experience, your affiant knows that certain events like phone calls, text messages, or data applications updating can cause the Service Provider to initiate

a signal on their network to establish the location of a device. This location data is then stored by the Service Provider, such as T-Mobile U.S.A. Such information as date, time, latitude, longitude, cell sites, and accuracy of the location data are stored and can be provided to law enforcement. Not every call, text message, or data application update causes his data to be created and stored. Therefore, there is no way to know what exact information the Service Provider has until it is reviewed. This data can be helpful to investigators when trying to locate the user of a given cellular device and/or to establish a pattern of life for the user of the given cellular device.

23.    The requested call detail records are evidence that will serve to potentially identify investigative leads and avenues forward, prove or disprove known and future investigative conclusions, and/or corroborate or disprove or discredit (as applicable) witness and/or suspect statements. Investigators want to learn if the cell site data for the user of T-Mobile U.S.A phone number **(404) 449-5544** show that the devices accessed cell sites in the area of the crimes during the relevant time frames. This will be a significant piece of information that will help investigators to know whether or not the user of the TARGET NUMBER should be considered as a suspect in this investigation.

24.    Based on your affiant's training and experience, I have learned that T-Mobile U.S.A. is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart,

even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

25.   Based on my training and experience, I know that T-Mobile U.S.A. can collect cell-site data about the TARGET NUMBER. I also know that wireless providers such as T-Mobile U.S.A. typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. Based on my training and experience, I know that wireless providers such as T-Mobile U.S.A. typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile U.S.A. typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the TARGET NUMBER user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

27. I further request that the Court direct T-Mobile U.S.A to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile U.S.A., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**This affidavit has been reviewed by SAUSA Carra Henderson.**

Respectfully submitted,

ROBERT CALLAHAN
Digitally signed by ROBERT CALLAHAN
Date: 2023.11.29 10:46:31 -05'00'

Robert E. Callahan, V., Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN TO ME VIA TELEPHONE OR
OTHER RELIABLE ELECTRONIC MEANS
AND SIGNED BY ME PURSUANT TO
FED. R. CRIM. P. 4.1 AND 4(d) OR 42(d)(3)
AS APPLICABLE

on November 29, 2023

HON. MOLLY H. CHERRY
UNITED STATES MAGISTRATE JUDGE

11